IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROBERT A. MARTINEZ,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Case No. CIV-06-1347-C
                                   )
AMITY CARE, L.L.C. A/KA GRACE      )
LIVING CENTERS, et al.,            )
                                   )
            Defendants.            )

## MEMORANDUM OPINION & ORDER

Defendants in this employment discrimination case have moved for summary
judgment on Plaintiff's claims.  Response and reply briefs have been filed.  For the reasons
stated below, summary judgment is granted on some but not all of the claims.

### STANDARD OF REVIEW

Summary judgment is proper only if the moving party shows "there is no genuine
issue as to any material fact and that the moving party is entitled to a judgment as a matter
of law." Fed. R. Civ. P. 56(c).  "An issue of fact is 'material' if under the substantive law
it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144
F.3d 664, 670 (10th Cir. 1998).  "An issue is 'genuine' if there is sufficient evidence on each
side so that a rational trier of fact could resolve the issue either way." Id.

If the movant carries the initial burden of demonstrating the absence of material fact
requiring judgment as a matter of law, the nonmovant must then set forth "specific facts"
outside the pleadings and admissible into evidence which could convince a rational trier of

fact to find for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court."  Adler, 144 F.3d at 672.

At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).  Thus, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); McWilliams v. Jefferson County, 463 F.3d. 1113, 1116 (10th Cir. 2006); Simms v. Okla. ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## BACKGROUND[1]

Plaintiff, a 19-year-old Hispanic male, worked as a dietary aide for Defendant Grace Living Center[2] nursing home in Norman, Oklahoma, before being fired in September 2006.

---

[1]  In accordance with the standards identified above, what follows is a description of the evidence in the light most favorable to Plaintiff.

[2]  The Amended Complaint describes both Amity Care, L.L.C. a/k/a Grace Living Centers and Security Health Care, L.L.C. as Plaintiff's former employer.  (Dkt. No. 22, Amend. Compl.) For purposes of this motion, the Court will refer to both collectively and generically as Plaintiff's former employer or Grace Living Center.

Dietary aides wash dishes, serve drinks to the residents, clean the kitchen, and set up the dining room.  On Saturday, September 16, Plaintiff got into an altercation with a co-worker, Defendant Jake Crawford.  Crawford is a young Caucasian male who worked as a nurse's aide.

The incident began when Plaintiff got a piece of pizza from the lobby.  When Crawford saw Plaintiff take the pizza, he said to him, "I thought you didn't want any."  Plaintiff responded by calling Crawford "stupid" or "a retard" and telling him to "mind your business."  (Pl.'s Ex. 4, Pl.'s Dep. at 64-66.)  Crawford angrily replied, "Shut up, spic."  (Id. at 66.)  At Plaintiff's urging, Crawford repeated his statement in a loud voice.  (Id. at 68.)  Plaintiff then said, "Let's step outside."  (Id. at 69.)  Another co-worker and several residents were present during this exchange.

A few minutes later, the two met in the parking lot next to the dumpsters.  According to Plaintiff, when Crawford came out:

> [H]e got into my face and I tried to back away.  He came forward and he said, "Yeah, you're a spic."  And I said, "I'm not trying to fight you."  And I asked him if he was going to hit me, and he didn't say anything.  Just kept calling me spic.  I'm not sure the exact amount of times, but at that time I knew that it just wasn't going to go anywhere.  So that's when I started to walk towards the building.

(Id. at 78-79.)  When Plaintiff was punching in the security code to get back inside, Crawford elbowed Plaintiff in the stomach and grabbed at the door over Plaintiff's hand in an effort to get by.  (Id. at 84-85.)

Later that day, Crawford walked up to Plaintiff, who was setting a table, and hit Plaintiff with a ten gallon tote he was caring and whispered, "You're still just a spic." (Id. at 88.) And at some time after that, Crawford came to the kitchen window and demanded that Plaintiff get him some ice for a resident. Getting ice was a dietary aide responsibility, but Crawford took the opportunity of being nearby to say,"There is going to be a lot more work for you around here. I can see to that." (Id. at 93.) Plaintiff construed that statement as a credible threat because Crawford's mother was a housekeeping supervisor at the Norman facility.

Plaintiff made several reports of Crawford's racial slurs to Grace Living Center supervisors. Although he had seen Lucille Overstreet, the cook and his supervisor when other managers were absent, before leaving to meet Crawford in the parking lot, he did not tell her about what had occurred until after returning. When Plaintiff did talk to Overstreet, she instructed him to stay away from Crawford and later told Crawford to leave the kitchen. (Id. at 87-88.) While still at work, Plaintiff also called Ann Lowe, the dietary manager who hired Plaintiff and who was his direct supervisor, on her cell phone. She told Plaintiff to call Defendant Linda Austin, Grace Living Center's Norman administrator, at home. (Id. at 95.)

Plaintiff called Austin, who had already been contacted about the situation by Crawford's mother, who was not at work but had heard about it from her son. According to Plaintiff, Austin stated that she "didn't care" and that if he and Crawford could not get along, then they needed to go home. (Id. at 96.) She claimed not to condone racism but also did not want to have to discipline them both. (Id. at 97.) Austin felt that "it was two young men

4

acting stupid," and she told Plaintiff the two of them were to stay away from each other. (Pl.'s Ex. 2, Austin Dep. at 49.)  After hanging up with Plaintiff, Austin called the facility and eventually talked to Crawford.  She told Crawford that she would not tolerate the use of racial slurs and instructed him to apologize to Plaintiff in a few days, when Plaintiff was not so mad.  (Id. at 50-54.)

Dissatisfied with Austin's response and presumably unaware that she had taken any action after talking with him, Plaintiff called Austin at home again.  According to Austin, he called her later that afternoon and then again at about 9:00 or 10:00 p.m.  In that late evening call, Austin fired Plaintiff.  She claims that she became frustrated with him and felt like he was being insubordinate for continuing to call her about the situation.  (Id. at 71-74.)

The following Monday, Austin notified Carol Caviness, the HR Director about Plaintiff's harassment report and termination.  Plaintiff also contacted Caviness by phone later that day to complain about his termination.  However, he never reduced his complaint to writing as Caviness directed.  (Pl.'s Ex. 1, Caviness Dep. at 28-29.)

Although Overstreet and another employee heard Crawford use racial slurs on several occasions, they did not report those incidents to their supervisors or management.  (Pl.'s Exs. 6 & 7.)  There is no evidence that management was aware of any racial tension or discriminatory incidents except for Crawford's sister once telling Overstreet that she was "black" and "from the ghetto" during an argument.  Overstreet was unhappy with how Austin handled that situation, believing that Austin was not interested in hearing her side of the story or taking any corrective action.  (Pl.'s Ex. 7, Overstreet Dep. at 72-73.)

5

Except for hearing about Crawford's use of racial slurs from Overstreet, Plaintiff had never heard Crawford use any racially offensive language before September 16. (Def.'s Ex. 1, Pl.'s Dep. at 51-52.) Prior to that incident, he had never felt threatened or intimidated in any way by any employees at Grace Living. (Id. at 164.)

Plaintiff and Crawford had copies of the employee handbook, which included an anti-discrimination policy. Plaintiff was hired as a dietary aide at another nursing home on September 18, but at a lesser hourly wage. The September 16 incident was not mentioned in Crawford's subsequent employee evaluation.

### DISCUSSION

Plaintiff has sued his former employer, supervisor Linda Austin, and co-worker Jake Crawford. He asserts claims for racial discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act as well as tort claims for negligent supervision, training, and retention, and assault. These claims and the arguments related to whether summary judgment is appropriate are addressed in turn.

### A.    Racial Discrimination

Plaintiff asserts a race discrimination claim against his employer and the individual defendants under § 1981 and Title VII. Section 1981 prohibits intentional racial discrimination in the making, performance, modification, and termination of contracts. "In particular, § 1981 protects employees from racial discrimination both in entering into an employment contract and in enjoying the benefits, privileges, terms and conditions of employment." Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1134 (10th Cir. 2004).

Likewise, Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).

Absent direct evidence of discrimination, a prima facie case of racial discrimination under either § 1981 or Title VII requires that: (1) the plaintiff is a member of a protected class; (2) that he suffered an adverse employment action; and (3) similarly situated employees were treated differently. See Exum, 389 F.3d at 1134; Trujillo v. Univ. of Colo. Heath Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998).

Here, the only adverse employment action of which Plaintiff complains is his termination. Because there is no evidence suggesting that his termination was itself racially motivated (as opposed to retaliatory), summary judgment on the racial discrimination claims is granted in Defendants' favor.

## B.    Hostile Work Environment

Plaintiff's hostile work environment claims against his former employer and the individual defendants are based on his encounters with Crawford on September 16. To survive summary judgment on a racially hostile work environment claim, a plaintiff must show "'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005) (citation omitted); see also Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir. 1998).

Defendants contend that there is no evidence that the racial harassment was either pervasive or severe.  In response, Plaintiff argues that the repeated use of the epithet "spic," Crawford's threatening demeanor and elbowing and bumping into Plaintiff, as well as the threat to cause Plaintiff more work could lead the jury to reasonably find that the harassment was severe.  The Court agrees.

"[A]n isolated incident [of harassment] may suffice if the conduct is severe and threatening."  <u>Turnbull v. Topeka State Hosp.</u>, 255 F.3d 1238, 1243 (10th Cir. 2001).  Of course, the victim still must show that he subjectively perceived the environment to be abusive and the harassment must have been such that a reasonable person would consider it severe under the totality of the circumstances.  <u>See</u> <u>Harsco Corp. v. Renner</u>, 475 F.3d 1179, 1187 (10th Cir. 2007); <u>Witt</u>, 136 F.3d at 1432-33.  With respect to the latter, objective component, the nature and context of the incident, whether it was physically threatening or humiliating rather than simply offensive, and whether it unreasonably interfered with the employee's work performance are relevant.  <u>Harsco</u>, 475 F.3d at 1187; <u>Witt</u>, 136 F.3d at 1433.

Plaintiff has identified evidence that the harassment he experienced was both objectively and subjectively severe.  Crawford's conduct could be interpreted as both humiliating and physically threatening.  He used a racial slur multiple times, including in the presence of a co-worker and nursing home residents.  He got very close to Plaintiff in an agitated and intimidating manner and actually came into physical contact with Plaintiff.  Crawford also sought Plaintiff out to continue the harassment later in the day, and although

Plaintiff was admonished to avoid Crawford or be sent home, he was nevertheless required by his job duties to interact with him.  In addition, there is evidence to indicate that Plaintiff believed Crawford might hit him, believed that Crawford would attempt to have Plaintiff's supervisor (Crawford's mother) retaliate against him, and was so disturbed by the incident that he complained to numerous persons, even calling the administrator at home about the situation multiple times.  Under these circumstances, the Court finds that this case presents the unusual situation where the events of a single day in an employment history might be deemed severe enough to have altered the terms, conditions, or privilege of Plaintiff's employment.  Therefore, summary judgment is not appropriate, as Defendants argue, because there is a genuine issue for trial as to whether the harassment was severe.[3]

## C.      Retaliation

Plaintiff also alleges that Austin's firing of him on the night of September 16 and management's subsequent failure to take any corrective action were retaliatory.

---

[3] A more problematic issue is one that the Court finds inadequately addressed in the briefs: the basis for Amity Care/Security Health Care's and Austin's liability.  Plaintiff has not clearly identified the basis on which he seeks to impose liability on his former employer.  See e.g., Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir. 1998) (identifying alternate bases for liability and explaining that liability for a hostile work environment created by co-worker's harassment depends on the employer's actual or constructive knowledge of the environment but failure to adequately respond).  Nor has he clearly identified the evidence or explained the basis for Austin's personal liability under § 1981 for the hostile work environment.  See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 852 (10th Cir. 2000) (discussing relationship between the personal liability of an agent under § 1981 and the employer's derivative liability under Title VII).  Although Defendants make a passing reference to the absence of prior reports of discrimination and/or harassment to management (Dkt. No. 55, Defs.' Br. at 12), the Court finds that they failed to raise these issues in their motion and does not consider them herein.

The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981. In analyzing retaliation claims, [the Court applies] the three-part test established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This structure requires the plaintiff to first establish a prima facie case of discrimination. Should the plaintiff succeed in proving a prima facie case, the employer must provide a legitimate and facially non-discriminatory reason for its decision. Finally, if the employer satisfies this burden, the plaintiff must establish that the defendant's reasons were a pretext for discrimination.

In order to establish a prima facie case of retaliation, Plaintiffs must show that (1) they engaged in protected opposition to discrimination, (2) adverse employment action was taken against them subsequent to or simultaneously with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action.

<u>Somoza v. Univ. of Denver</u>, ___ F.3d ___, 2007 WL 4465244 at *2-3 (10th Cir. Dec. 21, 2007) (citations omitted).

Defendants argue that Plaintiff has no evidence of causation (the third element of his prima facie case) and, even if he did, Defendants have offered a legitimate, non-discriminatory reason for his discharge and there is no evidence of pretext. Thus, they contend that Plaintiff's retaliation claims fail at summary judgment.

The Court does not agree. First, the Court finds that there is evidence of a causal connection between Plaintiff's report of harassment and his termination due to their very close temporal proximity. When the protected activity and the alleged retaliation are weeks or months apart, additional evidence of retaliation may be necessary to support a causal connection. <u>See, e.g.</u>, <u>Meiners v. Univ. of Kan.</u>, 359 F.3d 1222, 1231 (10th Cir. 2004). However, here the alleged retaliation occurred only a matter of *hours* after Plaintiff first contacted Austin to complain about Crawford's repeated use of a racial slur and *during* a

10

subsequent conversation about that same incident.  Although the jury may find that Austin

did not fire Plaintiff in retaliation for his making a harassment complaint (but for being

insubordinate), the timing of these events precludes summary judgment.

Second, the Court finds that there is just enough evidence of pretext to survive

Defendants' motion.

> To show that an employer's proffered nondiscriminatory reason for an
> employment action is pretextual, a plaintiff must produce evidence of such
> weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions
> in the employer's proffered legitimate reasons for its action that a reasonable
> factfinder could rationally find them unworthy of credence and hence infer that
> the employer did not act for the asserted non-discriminatory reasons.

E.E.O.C. v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 490 (10th Cir. 2006) (quotations

omitted), cert. granted, ___ U.S. ___, 127 S.Ct. 852 (Jan. 5, 2007), cert. dismissed, ___ U.S.

___, 127 S. Ct. 1931 (April 23, 2007).

Based on the evidence in the record, the jury could find that Austin was hostile or

unreceptive to complaints involving racially derogatory language because she told Plaintiff

that she "didn't care" about what happened, failed to investigate and/or was uninterested in

Overstreet's prior complaint about racially inappropriate behavior, and did not reference this

incident in Crawford's subsequent evaluation.  Further, the jury could find, giving this

evidence its full weight, that characterizing Plaintiff's indignation and insistence that

Crawford be reprimanded as "insubordination" was merely a pretext for retaliating against

him for complaining about racial harassment in the first place.  Accordingly, summary

judgment is denied.

**D.      Damages**

Defendants also argue that Plaintiff has no evidence to support an award of compensatory or punitive damages.  In response, Plaintiff contends that his new position paid $.50/hour less than his job at Grace Living Center and that he has suffered emotional distress as a result of the harassment and retaliation.  The Court agrees with Plaintiff that he may offer proof of his emotional distress through his own testimony.  Likewise, the Court finds that a decision on the appropriateness of a punitive damages instruction is premature.

**E.      Negligent Supervision, Training, and Retention**

Plaintiff's state law claim for negligent supervision, training, and retention is based on Crawford's "habit of using racial slurs in the workplace and getting into physical altercations with others."  (Dkt. No. 57, Pl.'s Resp. at 28.)  However, there is no evidence that Austin or other supervisors were aware of such conduct.  And the number of incidents actually described were of such a limited number that it is not possible to reasonably infer, without more, that they should have known about such conduct.  Further, there is evidence that the employee handbook prohibited discrimination and harassment and Austin and Caviness were aware of those policies, even if there is a question about what personal anti-discrimination training Austin received.  On this record, the Court finds that Plaintiff has failed to identify evidence that could reasonably support a verdict on this claim.  Therefore, summary judgment is granted on the negligent training, supervision, and retention claim in Defendants' favor.

**F.     Assault**

Finally, Plaintiff asserts a claim of civil assault against Crawford under Oklahoma law.  "The tort of assault protects a person's interest in freedom from apprehension of a harmful or offensive contact with the person."  Fenwick v. Okla. St. Penitentiary, 1990 OK 47, ¶ 8 n. 4, 792 P.2d 60, n.4.  It requires no actual physical contact.  Id. at 68.  Instead, a person is liable for assault if (1) "'he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact,'" and (2) "'the other is thereby put in such imminent apprehension.'"  Brown v. Ford, 1995 OK 101, n.34, 905 P.2d 223, 229 n.34 (quoting Restatement (Second) of Torts § 21).

Defendants argue that the assault claim fails because Crawford did not raise his fist at or threaten to hit Plaintiff.  However, that characterization of the evidence is unfounded. In his deposition, Plaintiff explained that he thought Crawford was going to hit him (and repeatedly asked him if he was going to do so) and that Crawford was "in [his] face," breathing hard, and red-faced.  (Pl.'s Dep. at 79.)  If found credible, this testimony could reasonably lead the jury to find that Crawford's actions caused Plaintiff to fear that he was going to be hit.  Therefore, summary judgment on the assault claim is denied.

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 55) is DENIED in part and GRANTED in part.  Plaintiff's claims for harassment and retaliation under § 1981

and Title VII and tort claim for assault against Defendant Crawford remain for trial.

Judgment will issue at the conclusion of these proceedings.

     IT IS SO ORDERED this 8th day of January, 2008.


ROBIN J. CAUTHRON
United States District Judge